IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**WOODROW A. MESSMER**,

    Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security Administration,

    Defendant.

Civ. No. 6:15-cv-00947-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Woodrow A. Messmer ("Messmer") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because the Commissioner's decision is supported by substantial evidence and free from harmful error, the decision is AFFIRMED.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Born in 1962, Messmer was 44 years old on the disability onset date and 49 years old on the date last insured. Tr. 27. He graduated high school and has some college experience. Tr. 39. He previously worked as a frame technician for a car dealership. Tr. 57.

Messmer protectively filed for DIB on January 19, 2011, alleging disability as of January 20, 2006 due to neck, lower back, shoulder, hip, and leg injuries. Tr. 155. His application was denied initially and upon reconsideration. Tr. 87, 91. A hearing was held on June 12, 2013 before an Administrative Law Judge ("ALJ"); Messmer was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-62. On August 19, 2013, ALJ Marilyn Maurer issued a decision finding Messmer not disabled. Tr. 19-29. Messmer timely requested review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a complaint in this Court. Tr. 1, 14.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Amin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th.Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Charter*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of performing certain types of work after considering the claimant's RFC, age, education, and work experience. *Id.*

At step one of the sequential evaluation process outlined above, the ALJ found that Messmer had engaged in substantial gainful activity after the alleged onset date, January 20, 2006, from January 20, 2006 until December 20, 2006. Tr. 22. Messmer did not engage in substantial gainful activity from December 20, 2006 until the date last insured. *Id.*

At step two, the ALJ determined Messmer had the following severe impairments: cervical degenerative joint disease and degenerative disc disease; right shoulder tendinosis; chronic lumbar strain; and obesity. Tr. 22.

At step three, the ALJ found that Messmer's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23. Because Messmer did not establish disability at step three, the ALJ continued to evaluate how Messmer's impairments affected his ability to work during the relevant period. The ALJ found Messmer had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b) except:

> He can sit, stand, and walk each 6 hours in an 8-hour day for a combined total of 8 hours of activity. He can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and occasionally stoop, crouch, crawl, and kneel. He can occasionally reach overhead, forward and to the side with his right upper extremity. He can frequently reach overhead with his left upper extremity, but has no other limitations in the use of that arm. He must avoid hazards such as large moving equipment and unprotected heights.

Tr. 23. At step four, the ALJ found that Messmer was unable to perform his past relevant work as an auto frame repairer. Tr. 27.

At step five, based on the testimony of the VE and other evidence, the ALJ determined Messmer could perform other work existing in significant numbers in the national and local economy despite his impairments, including shop estimator, electronics accessories assembler, marker, and wire worker. Tr. 28-29. Accordingly, the ALJ concluded Messmer was not disabled under the Act. *Id.*

Messmer alleges the ALJ erred by improperly assessing: (1) Messmer's symptom testimony; (2) Dr. Kathrin Weller's testimony; (3) lay witness testimony; and (4) whether the record was fully developed.

I.      Messmer's Symptom Testimony

Messmer argues the ALJ erred by rejecting his subjective symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ determined Messmer presented sufficient medical evidence of an underlying impairment that could cause some of the alleged symptoms; however, the ALJ found Messmer's statements concerning the limiting effects of those symptoms were not consistent with the record. Tr. 25.

5 – OPINION AND ORDER

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at l-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at 4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See Id.* at 6-7.

The ALJ found the record contained sufficient evidence of malingering to lower the evidentiary bar from clear and convincing to the more deferential substantial evidence standard of review. The ALJ noted that Messmer's medical records indicate "frequent observations of

6 – OPINION AND ORDER

give-way weakness." Tr. 27. Give-way weakness can occur when a physician exerts force against a muscle to test its strength. *The Neurological Examination*, AM. ACAD. OF NEUROLOGY, https://www.aan.com/uploadedFiles/Website_Library_Assets/Documents/4.CME_and_Training/ 2.Training/4.Clerkship_and_Course_Director_Resources/FM_Chp1_Sec4%20v001.pdf (last visited Aug. 19, 2016). A patient's strength will smoothly decrease in response to resistance when experiencing true weakness, as opposed to give-away weakness, when a patient's strength suddenly and sharply decreases. *Id.* Give-away muscular weakness is a sign of malingering. *Thebo v. Astrue*, 436 Fed. Appx. 774, 775 (9th Cir. 2011).

The record evinces numerous findings of give-away weakness in examinations performed by Dr. Weller. In October 2006, Dr. Weller tested Messmer and noted give-away weakness in the upper and lower right extremity, but not in the hand or wrist areas. Tr. 243. Messmer also displayed give-away weakness on his left side until Dr. Weller tested each muscle in isolation and found that each demonstrated "full strength." *Id.* Dr. Weller further noted that "identification of true weakness is not possible with element of giveaway" with respect to Messmer's right extremity. *Id.* Messmer continued demonstrating give-away weakness during appointments in January and August 2007, January 2008, February 2008, July 2010, and January 2011. Tr. 239, 240, 255, 258, 264, 273.

The ALJ noted further evidence of malingering in Messmer's use of his cane. Tr. 25, 27. Using a cane that has not been prescribed by a doctor is a valid reason to doubt a plaintiff's subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). In January 2013, Dr. Patrick Sarver stated:

> Of note, he walks with a cane and although I have instructed him to use the cane in his left hand as we were trying to support the right side, he is using the cane with his right hand in-step with his right foot. When he does this, he does not appear to have any discomfort in his shoulder.

Tr. 300.

7 – OPINION AND ORDER

Messmer's use of his cane is particularly troublesome. Messmer used his self-prescribed cane incorrectly and without apparent limitation or injury to his shoulder.

Messmer argues he feels afraid of falling without the cane, and that he cannot use the cane in his left hand because of pain. Specifically, Messmer stated at the hearing, "Well if I try to open a doorknob with it [his left hand], I get a shocking pain that goes down my neck and I sort of go down to the ground almost." Tr. 45. Messmer testified he had experienced such pain since at least 2006. *Id.* However, such pain is undocumented in any of his numerous medical appointments. Additionally, Messmer did not offer this explanation to Dr. Sarver when questioned about his incorrect use of the cane. Tr. 300. The ALJ did not err in identifying this as evidence of malingering and a reason to doubt Messmer's testimony.

Thus, because the ALJ proffered sufficient evidence of malingering, the substantial evidence standard of review applies.

The ALJ noted that secondary gain is a reason to doubt Messmer's subjective symptom testimony. "Secondary gain means external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 721 (29th ed.)). A plaintiff's pursuit of a disability claim for secondary gain is a reason to doubt their subjective symptom testimony. *Burrell*, 775 F.3d at 1139-40; *see* SSR 16-3p (The Commissioner recommends assessing the claimant's efforts to work). The ALJ stated several reasons to support her concerns about secondary gain, including Messmer's multiple workers' compensation benefits claims and the timing for filing his DIB claim. Tr. 24. Messmer filed a worker's compensation claim after his alleged injury in 2006; shortly after those benefits ended in 2011, Messmer filed for DIB. Messmer alleged another workplace injury in 2012, and applied again for worker's compensation. Tr. 292. In 2012, Messmer expressed frustration that

8 – OPINION AND ORDER

his retraining program paid significantly less than his old job. Tr. 300. The ALJ stated that Messmer "has no interest in working at jobs that pay less than his former work." Tr. 27. In reaching findings, an ALJ is "entitled to draw inferences logically flowing from the evidence." *Tommasetti* 533 F.3d at 1040 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). The ALJ's inference that Messmer sought secondary gain, and that this motive called his subjective symptom testimony into doubt, is not unreasonable.

The ALJ further noted activities of daily living that are inconsistent with Messmer's reported level of disability. Inconsistencies between a plaintiff's activities of daily living and alleged symptoms can be used to reject their subjective symptom testimony. *Berry v. Astrue,* 622 F.3d 1228, 1235 (9th Cir. 2010). At the hearing, Messmer testified he could sit for 20 to 30 minutes, stand for 20 to 30 minutes, walk for 10 minutes, and lift 20 pounds. Tr. 44. Messmer also stated he cannot walk very far without a cane. Tr. 189. However, Messmer's activities of daily living belied his testimony. Messmer had no problems with personal care, drove his vehicle, and shopped for several hours at a time. Tr. 163-168. Furthermore, Messmer worked in his yard for three-to-four hour increments twice per week. *Id.* While doing yardwork, Messmer was able to start his pull mower and mow the yard, as well as pick up fallen branches weighing up to 25 pounds. Tr. 255. Messmer told Dr. Weller he mowed his lawn for 45 minutes with frequent stops to empty the clippings bag. Tr. 253. While Messmer asserted he injured himself performing those activities, the mere fact he attempted them suggests his capabilities exceed his alleged level of impairment. Finally, Messmer went fishing frequently and occasionally rode an all-terrain vehicle. Tr. 170, 279. The ALJ did not err in citing these activities.

The ALJ also cited Messmer's inconsistent testimony as a reason to doubt his subjective symptom allegations. An ALJ may use a claimant's inconsistent testimony to reject their subjective symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The

record shows Messmer's reported pain levels were consistently between one and five out of ten. Tr. 264, 265, 267, 269, 275. At the hearing, however, Messmer testified his pain levels were eight out of ten, which is unsupported by the record. Tr. 49. Although Messmer argues for a different interpretation of the record, the ALJ's interpretation is rational and supported by substantial evidence. *Burch*, 400 F.3d at 679.

While Messmer argues other rationales set forth were erroneous, the argument is unavailing, as the reasons discussed above are sufficient to uphold the ALJ. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

II.    Dr. Weller's Opinion

*Opinions regarding the ultimate issue of disability are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).* If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient. *Orn*, 495 F.3d at 632. The ALJ should generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n. 2. The ALJ may reject physician

opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Because Dr. Sarver's opinion contradicts Dr. Weller's, the ALJ must provide specific and legitimate reasons supported by substantial evidence to reject Dr. Weller's opinion.

Dr. Weller treated Messmer from 2006 until early 2011 for his alleged conditions. Tr. 236-84. At his second appointment in 2006, Dr. Weller assessed Messmer with right lower back pain, leg pain, and shoulder, arm, and neck pain following an on-the-job injury eight months prior. Tr. 276. Dr. Weller noted the MRI taken soon after the injury was normal for Messmer's age and was not consistent with his pain. *Id.* Nonetheless, Messmer was prescribed Vicodin and Percocet. Tr. 275. In early 2007, Dr. Weller opined that Messmer's conditions were treatable with physical therapy and manual treatment, however, he still experienced pain in his back and leg. Tr. 273. Dr. Weller also opined that Messmer could push, pull, or lift up to 20 pounds, and could eventually reach a medium capacity work level. Tr. 272. In late 2007, Messmer reported that his pain levels were down to one to two out of ten, although his shoulder pain was a three out of ten. Tr. 263. Dr. Weller believed he could perform at the light duty level, and lift ten pounds or more frequently. *Id.*

In November of 2007 an MRI revealed tendinosis in Messmer's right shoulder, with a possible tear. Tr. 260. Dr. Weller prescribed physical therapy and a possible consult with an orthopedic surgeon. *Id.* In early 2008, Dr. Weller declared Messmer's lower back injury medically stationary; Messmer reported daily treadmill use for 25 to 30 minutes as well as core strengthening three times per week, in addition to his frequent yard work. Tr. 253. However, Messmer continued to allege shoulder pain and impingement. *Id.* In June 2008, Dr. Weller released him to work with a 35 pound lifting restriction. Tr. 252. Dr. Weller did not see Messmer

11 – OPINION AND ORDER

from August 2008 until October 2009, when they discussed the results of a September 2009 MRI. Tr. 238. The MRI revealed some cervical spondylosis and disc space narrowing at the C6-7 level, although no functional limitations were assessed. Tr. 238. Dr. Weller saw Messmer again in July 2010, where he refused to take a "tox screen," and therefore could not receive Vicodin. Tr. 239. Dr. Weller noted some tenderness in the lower spine, and a reduced right arm swing. *Id.* Dr. Weller saw Messmer six months later, in early 2011, and opined that "the patient's combined condition [is] limiting his ability to perform even a light level of work activity on a regular full-time basis." Tr. 241.

Dr. Weller wrote a letter for Messmer over one year later, in early 2012, opining that Messmer became disabled in 2009 due to cervical spondylosis, right rotator cuff tendinosis, and chronic low back pain. Tr. 237. In support of her opinion, Dr. Weller cited the 2007 and 2009 MRIs. *Id.*

The ALJ gave little weight to Dr. Weller's opinion because it was inconsistent with other evidence in the record, conclusory, unaccompanied by relevant evidence to support the opinion, and largely based on Messmer's subjective pain complaints. Tr. 27.

The ALJ noted that Dr. Weller's opinion was inconsistent with other evidence in the record. Inconsistency with other medical evidence in the record is a specific and legitimate reason to discount a physician's opinion. *Tommasetti*, 533 F.3d at 1041. As late as July 2010, Dr. Weller's notes show no evidence of a completely disabling impairment; while Messmer displayed some tenderness in the spine and give-away weakness in the right hip, his gait displayed no significant antalgia and he only "slightly guarded" his right shoulder, resulting in "reduced arm swing." Tr. 239. Dr. Weller did not diagnose any functional limitations at this appointment and took Messmer off his Vicodin prescription. *Id.* Messmer's January 2011 appointment evinced serious symptoms that prompted Dr. Weller to discuss the possibility of

12 – OPINION AND ORDER

disability with Messmer for the first time. Tr. 241. However, Dr. Weller's use of the term "disability" does not align with its legal definition. During that appointment she wrote, "[t]he patient's combined condition limiting his ability to perform even a light level of work activity on a regular full-time basis." *Id.* Dr. Weller failed to note whether Messmer was capable of performing work at the sedentary level, and instead skipped from the light duty work level straight to disability. Dr. Weller's medical records do not provide support for the limitations set out in the opinion. The ALJ did not err in identifying these inconsistencies.

The ALJ also gave little weight to Dr. Weller's opinion because it was conclusory and unsupported by relevant evidence. An ALJ may reject a treating physician's opinion when that opinion is conclusory. *Batson*, 359 F.3d at 1195. Although the ALJ cited two MRIs displaying shoulder tendinosis and cervical spondylosis, Dr. Weller failed to explain how those conditions resulted in functional limitations such that Messmer could not work. Tr. 327. The ALJ did not err in her characterization of Dr. Weller's opinion.

Finally, the ALJ gave great weight to Dr. Sarver's opinion. Tr. 27. Dr. Sarver also treated Messmer, taking over for Dr. Weller in December 2011. Tr. 287-304. Dr. Sarver consistently approved Messmer for light duty work. *Id.* The non-examining Agency physicians, Drs. Sharon Eder and Richard Alley, also opined that Messmer was not disabled. Tr. 74, 86. Messmer argues that Dr. Weller's opinion should be given more weight because she is a rehabilitation specialist and her opinion touches on her specialty. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). However, given the reasons outlined above, the ALJ did not err in giving more weight to Dr. Sarver's opinion.

The ALJ erred by stating Dr. Weller's opinion largely reflected Messmer's subjective symptom testimony. However, this error was harmless as the ALJ gave several specific and legitimate reasons for giving little weight to Dr. Weller's opinion.

13 – OPINION AND ORDER

III.     Third Party Testimony

Messmer argues the ALJ failed to articulate legally sufficient reasons for only mentioning the lay witness testimony of Mr. William Campbell. Lay witness evidence is competent and cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014). An ALJ may reject lay witness testimony by giving germane reasons for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Messmer's friend, Mr. Campbell, testified that he sees Messmer two days per week to fish or talk. Tr. 170. Mr. Campbell testified that Messmer watches television, performs some household chores and yardwork, shops for necessities, takes care of his cat, and cannot "do mutch [sic] anymore." Tr. 171. Regarding Messmer's overall condition, Mr. Campbell stated that Messmer does not sleep well, is constantly in pain, and is often grumpy as a result. Tr. 170, 171, 174. Additionally, he stated that Messmer could walk at least one block without resting. Tr. 175.

The ALJ mentioned Mr. Campbell's testimony only briefly, noting that the two go fishing and spend time together weekly. Tr. 24. She further acknowledged Mr. Campbell's observation that Messmer frequently suffered from pain. *Id.* She also stated that, according to Mr. Campbell, Messmer does house and yard work two times per week for three to four hours each session. *Id.* After this recitation, the ALJ analyzed the testimony of both Messmer and Mr. Campbell by stating, "Mr. Messmer's and third-party statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 25. Therefore, the ALJ's analysis of Messmer's subjective symptom testimony simultaneously served as an analysis of Mr. Campbell's testimony. Because the court found the ALJ gave substantial reasons for doubting Messmer's testimony, it follows those reasons satisfy the germane standard for lay witness testimony. The ALJ did not err in declining to rely on Mr. Campbell's testimony more fully.

14 – OPINION AND ORDER

IV.     Developing the Record

An ALJ in social security cases has a duty to fully and fairly develop the record to assure that the claimant's interests are considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). However, the claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

Messmer argues the ALJ erred because finding Dr. Weller's opinion inconsistent with other evidence triggered her duty to develop the record. As stated previously, the ALJ found Dr. Weller's opinion inconsistent with other medical evidence. Tr. 27. Messmer confuses "inconsistent" evidence, which does not trigger a duty to further develop the record, with "ambiguous" evidence, which does. Because the record before the court is unambiguous, the ALJ satisfied her duty to develop the record.

## CONCLUSION

For the above reasons I find that the ALJ supported his findings with substantial evidence in the record. As such, this Court holds that the ALJ's RFC is free from legal error and therefore the Commissioner's decision denying Messmer's application for DIB is AFFIRMED.

IT IS SO ORDERED.

DATED this  23rd   day of September, 2016.


          s/ Michael J. McShane
**Michael J. McShane**
**United States District Judge**

15 – OPINION AND ORDER